**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Ronald B. Edwards,                              :
                                                :
            Plaintiff,                          :
                                                :
        v.                                      :        CIVIL ACTION NO.
                                                :        1:07-cv-03052-JOF
Fulton County and                              :
Thomas C. Andrews,                             :
                                                :
            Defendants.                         :

**OPINION & ORDER**

This matter is before the court on Plaintiff's Emergency Motion for Discovery [90],

Defendants' Motion for Summary Judgment [92], Defendants' Motion for Leave to File

Excess Pages [93], Plaintiff's Motion for Leave to File Excess Pages [96], and Plaintiff's

Motion for Leave to File Sur Reply [106].

**I.      Background**

Plaintiff Ronald Edwards is an African-American male. Plaintiff has been employed

with Defendant Fulton County for more than thirteen years and currently serves as a

Community Development Specialist in the Department of Housing and Community

Development. The instant action is a wage dispute. Plaintiff contends that he has not been

and is not being paid at the same wage rate as women, white, and/or younger employees

performing the same or similar work as him. On December 10, 2007, Plaintiff filed the instant action asserting equal protection and due process claims against Defendants Fulton County and Andrews under 42 U.S.C. §§1981 and 1983, and claims against Fulton County under the Equal Pay Act, 29 U.S.C. §206(d). Plaintiff's Complaint also asserts state law claims for breach of contract, estoppel, and unjust enrichment against Fulton County. Plaintiff maintains that he has suffered actual damages in the form of lost pay and distress, and he demands attorneys' fees under O.C.G.A. § 13-6-11 and 42 U.S.C. §§1981 and 1983.

Defendant Andrews filed a Motion to Dismiss on October 31, 2008. The court originally granted the motion, dismissing all claims against Defendant Andrews. Plaintiff filed a motion for reconsideration, and upon reconsidering, the court granted the motion for reconsideration in part. The court found that Plaintiff did state a claim against Defendant Andrews under §1983, but still dismissed Plaintiff's claims against Defendant Andrews pursuant to §1981. The court also found that under the facts alleged in the Complaint, the court could not determine, at that time, that Andrews was protected by qualified immunity for the §1983 claims. Defendant Andrews appealed the court's order granting, in part, Plaintiff's motion for reconsideration. On March 2, 2010, the Eleventh Circuit affirmed this court's decision, and the parties resumed discovery. Defendants filed their Motion for

Summary Judgment on August 11, 2010. Plaintiff responded to the motion, and Defendants filed a reply brief. Plaintiff has also moved for leave to file a surreply.[1]

---

[1] Neither the Federal Rules of Civil Procedure nor this court's local rules contemplate the filing of surreplies. *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005) (Duffey, J.). The court can, in its discretion, allow a party to file a surreply. *Id*. However, "this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Id*. As this court has previously warned, "[t]o allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs." *Garrison v. Northeast Georgia Medical Center, Inc.*, 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999) (O'Kelley, J.). Having reviewed both Plaintiff's proposed surreply, the court finds that Plaintiff, for the most part, is simply disagreeing with Defendants' statement of and interpretation of law, and the proposed surreply is unnecessary to the court. Plaintiff's Motion for Leave to File Sur Reply is DENIED [106].

AO 72A
(Rev.8/82)

The following facts are undisputed.[2] Plaintiff Ronald Edwards is an African

American male, over the age of forty. He began working with the Fulton County Department

of Housing and Community Development as a Community Development Specialist in 1994,

and he currently still works in that position. D.E. [92-2], ¶ 1. He presently manages Fulton

County's Housing Rehabilitation Program, as well as the Emergency Assistance Grant

---

[2] As required by Local Rule 56.1 B(2)(b), Plaintiff filed a statement of additional material facts. In response to most of Plaintiff's proffered statements, Defendants object on the basis that the proffered fact does not comply with the provisions set out in Local Rule 56.1 B(1). Defendants never explain why they do not comply with Local Rule 56.1 B(1), which states

> A movant for summary judgment shall include with the motion and brief a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact must be numbered separately and supported by a citation to evidence proving such fact. The court will not consider any fact: (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts.

For some of Plaintiff's proffered statements, it is readily apparent to the court why Defendants object because the statement is clearly a legal conclusion or one single numbered statement contains a lengthy paragraph full of facts. E.g., D.E. [97], ¶ 7 (stating a legal conclusion); D.E. [97], ¶ 8 (lengthy paragraph). In fact, many of Plaintiff's statements are paragraphs containing multiple facts. For some, the failure to comply with Local Rule 56.1 B(1) is not so apparent. However, it does not appear that many of the issues with Plaintiff's Statement of Additional Material Fact fall into those categories of things the court "will not consider." As such, the court has reviewed Plaintiff's Statement of Additional Material Fact, including Plaintiff's citations to evidence.

Program. *Id*. at ¶ 2. Plaintiff supervises two employees to ensure compliance with federal regulations. *Id*. at ¶ 4.

Defendant Andrews was the Fulton County Manager from November 1999 until December 31, 2007, when he retired. D.E. [92-2], ¶ 5. Defendant Andrews "was responsible for managing the day-to-day operations of [the] Fulton County Government which encompassed over 6,000 employees." *Id*. at ¶ 6. He was also responsible for "carrying out the policies and procedures of the Fulton County Board of Commissioners." *Id*. at ¶ 7.

Fulton County has a classification system by which it classifies job positions, and each classification appears to have a pay range attached to it. The higher the classification, the higher the pay range. Plaintiff's Complaint alleges that he was actually performing work at a level classified higher than his level but has not been and is not being paid the same wage as female, white, and/or younger employees performing the same level of work for Fulton County. Plaintiff maintains that he complained about this wage disparity to his supervisors; his supervisors notified him that they were aware of the problem and were taking actions to rectify it; his supervisors notified County management about Plaintiff's complaints; and his supervisors told him that a decision would be forthcoming from County management. According to Plaintiff, he never received a final decision from the County regarding his complaints.

AO 72A
(Rev.8/82)

Fulton County also has a formal grievance process, and on or about May 3, 2007, Edwards filed a grievance with regard to his pay issues. D.E. [92-2], ¶ 38. The Fulton County Grievance Review Committee denied Edwards' grievance, and the reason given was that the grievance "was untimely as it must be submitted within 20 working days of the incident giving rise to the grievance or of becoming aware of the incident." *Id*. at ¶ 41. It appears that the only specific dates referenced in Edwards' grievance were the years 1999 and 2005, although he makes it clear in the grievance that he considered his concerns to be ongoing. D.E. [97-17]. According to Edwards, he did not receive the rejection of his grievance until July 11, 2007, although the grievance was dated June 15, 2007. Edwards contends that the grievance was given to him too late to file an appeal, but even still, he filed an appeal with Defendant Andrews on July 31, 2007, and Andrews ignored Plaintiff's request. Edwards did not attempt to file a new grievance. D.E. [92-2], ¶ 46.[3] Plaintiff further alleges that when an appeal is denied, the appellant has a certain number of days to request arbitration of the matter, and by ignoring Plaintiff's attempt to appeal and never giving him an actual denial, Defendant Andrews effectively kept Plaintiff from being able to exercise this right to arbitrate.

Out of these events, Plaintiff asserts multiple claims against Defendants. A reading of the Complaint, Defendants' brief in support of its Motion for Summary Judgment, and

---

[3] Plaintiff does not discuss his filing of a grievance or the denial of that grievance at all in his additional statement of facts.

Plaintiff's response brief indicate that through §1983, Plaintiff contends that both Defendants violated his constitutional rights to equal protection and due process by failing to pay him equivalent amounts to those of different races, age, and gender. Plaintiff further contends that Defendant Fulton County violated the Equal Pay Act, and both Defendants violated §1983 by failing to properly train its employees in the areas of discrimination and in responding to complaints of discrimination. Plaintiff contends that his due process rights were violated by the denial of his contractual right to appeal and arbitrate the denial of his formal grievance with Fulton County. Plaintiff further alleges that Defendants violated Plaintiff's constitutional right to be free from race discrimination through §1981. Moreover, Plaintiff alleges that he was retaliated against in violation of the Equal Pay Act. Finally, Plaintiff alleges several state law claims against Defendant Fulton County for breach of employment contract, estoppel, and unjust enrichment.

Defendants appear to be seeking summary judgment on all of Plaintiffs' claims. Generally, Defendants allege that Plaintiff cannot make out a *prima facie* case of gender, age, or race discrimination, nor can Plaintiff make out a *prima facie* case of an Equal Pay Act violation. Even if Plaintiff could, Defendants assert that they have sufficient affirmative defenses, and further, that Plaintiff cannot show pretext. Defendants make the same arguments with regard to Plaintiff's retaliation claim. As for the state law claims, Defendants allege that Fulton County has sovereign immunity, and therefore, Plaintiff's claims fail.

AO 72A
(Rev.8/82)

## II.    Discussion

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears "the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met that burden, the nonmoving party must present evidence to establish a material issue of fact. *Id.* at 325. "Where the nonmoving party bears the burden of proof at trial, the moving party may discharge this 'initial responsibility' by showing that there is an absence of evidence to support the nonmoving party's case . . . ." *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). Regarding "issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). All reasonable doubts should be resolved in the favor of the nonmovant. *Id.*

### A.    Equal Pay Act

AO 72A
(Rev.8/82)

The Equal Pay Act is "directed . . . at wage discrimination between the sexes and forbids the specific practice of paying unequal wages for equal work to employees of the opposite sex." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992). "The Equal Pay Act prescribes a form of strict liability . . . The plaintiff is not required to prove discriminatory intent on the part of the defendant." *Id.* at 1533. "To establish a prima facie case under the Equal Pay Act, an employee must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir. 1998) (internal quotations omitted). A plaintiff need not show that his or her job is identical to someone's of the other sex, and instead, must demonstrate that the jobs are substantially similar, or in other words, "show that the skill, effort and responsibility required in the performance of the jobs are substantially equal." *Id.* (internal quotations omitted). The plaintiff also need not compare the actual qualifications and experience of the male and female employees being compared, and the focus is on the primary duties of each job. *Id.* "Although job titles are entitled to some weight in this evaluation, the controlling factor under the Equal Pay Act is job content – the actual duties that the respective employees are called upon to perform." *Miranda*, 975 F.2d at 1533 (internal quotations omitted).

AO 72A
(Rev.8/82)

Once the plaintiff has shown a *prima facie* case, the burden then shifts to the employer to prove its affirmative defense. *Miranda*, 975 F.2d at 1533. The Equal Pay Act provides for exceptions that employers may rely on to avoid liability: "(I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Corning Glass Works*, 417 U.S. 188, 196 (quoting 29 U.S.C. §206(d)(1)). The burden on the employer is heavy because the employer must show that "the factor of sex provided no basis for the wage differential." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995). If the employer meets that burden, the plaintiff must then rebut the employer's explanation by "showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential." *Id.*

Plaintiff relies on Carolyn Stewart, another Fulton County employee, as his comparator. There is no dispute that she was paid a higher wage or that she worked under similar working conditions. The parties focus their arguments on whether Plaintiff and Stewart did equal work. Defendant Fulton County contends that she did not, and further contends, that it based Plaintiff's pay on a factor other than sex, and Plaintiff cannot show pretext. Plaintiff argues that he has made out a *prima facie* case. He then argues that Defendants did not plead their affirmative defense, and therefore, cannot raise it. Even if Defendants have not waived such a defense, Plaintiff argues that Defendants have not shown

10

that the factor of sex provided no basis for the wage differential, and Plaintiff has adduced sufficient evidence of pretext.

Carolyn Stewart worked for Fulton County in the Environmental and Development Department in a planning capacity for some number of years. D.E. [92-2], ¶ 10. In January of 2005, Stewart was Planner III in the Department of Environment and Community Development. *Id*. at ¶ 12. Then on January 10, 2007, she was transferred to the Department of Housing and Community Development. *Id*. at ¶ 12. A few weeks later, she was promoted to Community Development Manager, and she received an increase in her salary and her classification. *Id*. at ¶ 17. As a Community Development Manager, Stewart "served as Manager over the Home Program, the Down Payment Assistance Program and the Tenant-based Rental Assistance Program in the Department of Housing and Community Development." *Id*. at ¶ 9.

Defendants describe Fulton County's job classification as the "Decision Band Method." D.E. [92-1], 6. The Decision Band Method ("DBM") gives each position a classification consisting of a band, a grade, and a subgrade. According to Defendants,

> [The] "band" [is] representative of the level of decision-making responsibility and identified by the first character/letter; [the] "grade"[is] representative of the level of supervision associated with the position and identified by the second character/letter; and [the] "subgrade" [is] representative of the level of complexity of the position and identified by the third character/letter. [For instance, in] Plaintiff's position, a DBM of C43, the "C" represents the band, the "4" represents the grade and the "3" represents the subgrade for that

11

position. Under the DBM structure, jobs are classified based on the level of decision-making responsibility, the essential duties of the position, the level of complexity of the job, the reporting structure and physical requirements of the job. Two employees classified in the same "band" may share job functions; however, they will have a significantly different level of complexity in their overall jobs if they are classified in different "grades".

*Id.* (internal citations omitted). Plaintiff Edwards' position as Community Development Specialist is classified as a C43, and in May 2008, his salary was $63,729. D.E. [92-2], ¶ 28. Defendants claim that "[a]ll 'C' band employees make decisions that relate to the control of how work is done or the management of an individual single line of business, including major professions and key analytical jobs as well as unit supervisors." D.E. [92-1], 6. In 2005, when she was Planner III, Stewart's classification was C43, and she was paid $62,546. D.E. [92-2], ¶ 13. When she transferred to the Department of Housing and Community Development in early 2007, she kept both her classification and her salary. *Id.* at ¶ 15. "On or about January 24, 2007, after the Fulton County Board of Commissioners approved a cost of living increase for all employees, Ms. Stewart's salary was $63,796.92 and her DBM remained C43." *Id.* at ¶ 16. Also on January 24, 2007, Stewart was promoted to Community Development Manager, a job classified at level C52, and her salary increased to just over $ 70,000.[4] *Id.* at ¶ 19.

---

[4] Defendants contend her salary was $70,177.40, but Plaintiff argues that it was $71,581. At any rate, she was paid more than Plaintiff.

AO 72A
(Rev.8/82)

Plaintiff, classified as a Community Management Specialist, manages Fulton County's Housing Rehabilitation Program, as well as the Emergency Assistance Grant Program. D.E. [92-2], ¶ 2. According to Defendants, the Housing Rehabilitation Program "provides for bringing dilapidated properties into code compliance for low . . . and moderate-income individual and senior citizens," while the Emergency Assistance Grant Program "provides roof repair, plumbing problems or mechanical problems for persons within the same demographic." D.E. [92-1], 8. Stewart, as Community Development Manager, was the manager over the "Home Program, the Down Payment Assistance Program, and the Tenant-based Rental Assistance Program," and she also "had the responsibility of handling the Notification of Fund Availability (NOFA) grants provided to 501(C)(3), 504 and 506 organizations under the IRS Code." *Id*. at 9.

Defendants contend that Stewart's programs were more complex than those managed by Edwards and the level of professionals she supervised was higher, thus accounting for her C52 classification. Defendants do not actually describe how the programs were more complex. It also appears that Plaintiff supervises two people, while Stewart only supervised one person. Robinson Depo., 5, 9. Stewart was supposed to supervise two people but was in reality only supervising one as the other position was vacant. *Id*. However, it appears from Plaintiff's own evidence that the person supervised by Stewart was classified at a higher

level than the people Plaintiff presently supervises. D.E. [97-3], Exhibit A-2.[5] Defendants also point out that Plaintiff admits that Stewart oversees or oversaw the administration of grant funds and projects and manages assigned staff, while Plaintiff only identifies and recommends eligible projects for federal funding. D.E. [105], 3-4.

Plaintiff, in return, argues that he and Stewart clearly did equal work. In support, Plaintiff offers the affidavit of Stewart. Stewart states that the Community Development Manager job description accurately describes her job responsibilities, skills, and duties, and she states that the following portion of her job description correctly states the only difference between her job and Plaintiff's job: "Community Development Manager is distinguished from Community Development Specialist in that the former oversees the administration of grant funds and projects in addition to managing assigned staff, whereas the latter identifies and recommends eligible projects for federal funding." D.E. [97-1], 6. Stewart testified that both she and Plaintiff managed staff and oversaw projects as part of their daily work, and they both performed the same duties in supervising employees, those duties including

---

[5] Plaintiff indicates that this docket entry contains Exhibits A, A-1, and A-2. The docket entry includes an affidavit, a job description, and an internal organizational chart pertaining to Plaintiff and Stewart's department. However, while the affidavit is labeled Exhibit A, neither of the other two documents are labeled A-1 or A-2. The court presumes that Exhibit A-2 is the organizational chart, as it appears on the court's electronic filing system as the last of the three documents. The court considers the job description to be Exhibit A-1. The organizational chart, which is dated June 2006, shows that the Home Manager, now Stewart, supervises Community Development Specialists, who are classified as C43 employees, while Plaintiff supervises Senior Inspectors who are B23 level employees.

performance evaluations, assignment of work, signing time sheets, leading weekly staff meetings, monitoring projects, and preparing request for payment and issuing checks to contractors. D.E. [97-3], Stewart Affidavit, ¶ 4. Stewart alleges that "In short, [Plaintiff] was performing the same job duties and functions that I performed in that our jobs involved the same responsibilities and required the same effort." *Id.* Plaintiff also points to evidence showing that the director of his department and the assistant director of his department thought that Plaintiff should be paid more because he was doing work outside of his classification and that he was doing C52 level work. Further, there is evidence that Plaintiff actually acted as HOME Manager, Stewart's job, at some point in time, although he was not acting in such a capacity when Stewart became HOME Manager – someone named Melin Parker was. *See* D.E. [97-3], Exhibit A-2; D.E. [97-4], Exhibit B1.

The court notes that in their briefs, neither party has really informed the court what Plaintiff and Stewart's current "primary" duties are or how much time they spend on their different duties, beyond stating the names of the programs they both supervise. Defendants focus almost exclusively on their own classification of Plaintiff and Stewart's job titles and description rather than the actual duties they performed, and Plaintiff focuses on his contention that they were both performing C52 level work. However, Plaintiff's evidence itself shows that Plaintiff and Stewart's jobs are different in many respects. Stewart

15

administers three programs, and her job description, which she testified is accurate, states

that her essential duties include:

- Oversees the administration of federal grant funds provided for community development within Fulton County and its municipalities.

- Manages assigned staff, including establishing workloads, prioritizing work assignments, evaluating employee performance, interpreting and enforcing policies and procedures, resolving staff issues, and administering disciplinary action as required.

- Develops and presents comprehensive reports, business studies, and findings.

- Prepares, updates and amends cooperative agreements.

- Develops action plans and creates strategies and methods for establishing policy for special projects.

- Identifies eligible development projects and recommends funding, conducts an evaluation and ranking of proposals, and prepares grant proposals and recommendations for federal funding.

- Monitors and ensures compliance with all grant conditions by sub-recipients and authorizes payments.

- Provides financial management of grant-funded projects; prepares operating budgets, reports, and cost allocations; manages expenses; and ensures appropriate audit trails.

- Consults with and serves as a County liaison to governmental funding agencies.

- Meets with County administrators and officials to initiate and execute community development projects.

16

D.E. [97-3], Exhibit A-1. Plaintiff, on the other hand, administers only two programs, and in doing so, his duties and responsibilities include, in part:

- Prepare and submit advertisements for the general public, announcing the availability of federal funds housing assistance.

- Establish and maintain eligibility Waiting Lists of homeowners . . . in accordance with the Department of Housing and Urban regulations.

- Request Title Reports prepare Title analysis for each potential housing applicant and provide assistance to elderly homeowners to help clear title problems . . .

- Oversee bidding process for all housing rehabilitation projects . . .

- Facilitate all loan closing for Deferred Payment/Emergency Assistance Grants Program . . .

- Assist and/or aid in the preparation of grant applications.

- Prepare and provide housing rehabilitation data for Annual Comprehensive Strategic Plan. . .

- Interpret County codes for business, homeowners, builders, developers, and other interested parties.

- Identifies eligible Rehab projects and recommends funding. . . .

- Conduct inspection for quality control. . . .

- Oversee bidding process for all housing rehabilitation projects.

D.E. [97-4], Exhibits B1 and B2.[6]

_____

[6] Again, Plaintiff indicates that this docket entry contains Exhibits B-1 and B-2. The docket entry includes a memorandum from Joseph Johnson, Director of Housing and Community Development, to Defendant Andrews, and a memorandum from Camilla J. Moore to Defendant Andrews. However, neither document is labeled as B-1 or B-2. The

AO 72A
(Rev.8/82)

There are some general and broad similarities. Plaintiff's evidence shows that Plaintiff, like Stewart, also "[o]versee[s] the administration of . . . funds" for his programs, and Plaintiff also "[m]anage[s] assigned staff, including establishing workloads, prioritizing work assignment, evaluating employee performance, interpreting and enforcing policies and procedures, resolving staff issues, and administering disciplinary action as required." *Compare* D.E. [97-3], Exhibit A-1, *with* D.E. [97-4], Exhibits B1 and B2. Plaintiff and Stewart supervise a similar, small number of employees and both manage programs under in the Housing and Community Development project. However, as can be seen by the list of job duties quoted above, Plaintiff's own evidence shows that other than those generalizations, the jobs are very different. Further, Stewart manages more programs, and the one employee she supervises is classified at a higher level than those two supervised by Plaintiff.

A plaintiff's burden of establishing a *prima facie* case under the EPA is high. *Miranda*, 975 F.2d at 1526; *Waters v. Turner, Wood & Smith Ins. Agency*, 874 F.2d 797, 799 (11th Cir.1989) (indicating that the standard for determining whether jobs are equal in skill, effort, and responsibility is high). The Eleventh Circuit has noted that "When Congress enacted the Equal Pay Act, it substituted the word 'equal' for 'comparable' to show that 'the jobs involved must be virtually identical, that is, they would be very much alike or closely

court presumes the Johnson memo is Exhibit B-1, as it appears on the court's electronic filing system as the first of the two documents.

related to each other.' The restrictions in the Act were meant 'to apply only to jobs that are substantially identical or equal.'" *Waters*, 874 F.2d at 799. Here, it is clear that Plaintiff's present job is not substantially similar to Stewart's job, and Stewart is not a proper comparator under the Equal Pay Act, to the extent Plaintiff is attempting to compare his present job and accompanying tasks and duties to her present job.

There is, however, evidence on the record supporting Plaintiff's assertion that he actually acted as "Home Manager" before, although it is undisputed that Plaintiff was not acting as Home Manager directly before Stewart was promoted.[7] It is unclear to the court exactly when Plaintiff contends he acted as Home Manager. Nor is it clear that at the time Plaintiff allegedly acted as Home Manager, his duties were the same as Stewart's present duties. In his own affidavit, Plaintiff simply states "I served at one time in the same position Carolyn Stewart held as Home Manager." D.E. [97-15], ¶ 11. However, Stewart currently appears to manage the Home program, **and** the Down Payment Assistance Program and the Tenant-based Rental Assistance Program. It is unclear from the record whether Plaintiff is arguing that as acting Home Manager, he also managed all of those programs or just the Home Program. Plaintiff also cites to a September 22, 2006 interoffice memo sent from Joseph Johnson, Director of Housing and Community Development to Defendant Andrews

---

[7] The aforementioned June 2006 organizational chart lists Melin Parker as the Home Manager, and Plaintiff admits that Melin Parker is the person that Stewart replaced. The court has no information regarding the gender or salary of Melin Parker.

and Keith Chadwell, Deputy County Manager. *Id.* In that September 2006 memo, Johnson states that Plaintiff "has served as the supervisor of the HOME section . . . for almost a year." D.E. [97-4]. Plaintiff's grievance however, filed with the Grievance Review Board in 2007, states that he acted as Home Manager for only five months in 2005. D.E. [97-17]. It also appears that in June of 20006, Melin Parker was Home Manager, and Melin Parker was Stewart's predecessor. *See* D.E. [97-3], Exhibit A-2. Stewart agrees that Plaintiff acted as Home Manager "at one time" prior to her obtaining that position. D.E. [97-3], Exhibit A, ¶ 4. Although it is unclear when Plaintiff acted as Home Manager, and the evidence Plaintiff offers presents conflicting dates, there is evidence from which it could be reasonably inferred that he actually performed Stewart's job in the past and at a lower wage than she is or was paid.

"It is well-established that a plaintiff may establish an Equal Pay Act violation by comparing her wages to that of an employee of the opposite sex who either preceded or succeeded her; and, when the higher-paid comparator replaces the plaintiff (rather than preceding [the plaintiff]), the Equal Pay Act violation [applies] during the period when the plaintiff receives a lower wage, even though the comparator has not yet been hired." *Ramsey v. State of Alabama Public Serv. Com'n*, 86 F. Supp. 2d 1124, 1127 (M.D. Ala. 2000) (citing *Arrington v. Cobb County*, 139 F.3d 865 (11th Cir.1998); *Pearce v. Wichita County*, 590

F.2d 128, 133 (5th Cir.1979)[8]). In response, Defendants do not actually argue that Plaintiff never acted as Home Manager. Instead, Defendants argue that Plaintiff must present evidence showing that "Plaintiff was first in Stewart's position of Community Development Manager classified at a DBM of C52, then once vacated Stewart was put into the same position at higher pay." D.E. [92]. The court disagrees. If Plaintiff can show that while he acted as Home Manager, he did those same primary duties that Stewart currently does or did, then it is irrelevant that Defendants still had Plaintiff classified at a C43 level. The Equal Pay Act looks to the actual job duties of a plaintiff, not the classifications or job titles given to them by their employer. Plaintiff has proffered evidence that he acted as Home Manager, prior to Stewart becoming Home Manager, and yet, was paid a lower salary. With all reasonable inferences taken in Plaintiff's favor, Plaintiff has created a genuine dispute of fact regarding his *prima facie* case under the Equal Pay Act.

Based on the aforementioned discussion, Plaintiff's Equal Pay Act claim can only move forward with respect to that period of time when he alleges he was acting as Home Manager, as he has not shown that his present work as the manager of the Housing Rehabilitation Program and the Emergency Assistance Grant Program is the same as

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

AO 72A
(Rev.8/82)

Stewart's work as manager over the Home Program, the Down Payment Assistance Program, and the Tenant-based Rental Assistance Program.

The burden now shifts to Defendant Fulton County to assert one of the four statutory exceptions outlined in the Equal Protection Act. *Miranda*, 975 F.2d at 1533. Those exceptions are "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." *Corning Glass Works*, 417 U.S. 188, 196 (quoting 29 U.S.C. §206(d)(1)). The burden on the employer is heavy because the employer must show that "the factor of sex provided no basis for the wage differential." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995). Defendants rely on the last exception, "a differential based on any other factor other than sex."[9]

---

[9] Plaintiff cites Federal Rule of Civil Procedure 11(c) in support of his argument that Defendants have waived this affirmative defense. That rule deals with sanctions regarding an attorney's representations to the court by signing documents filed with the court. The court thinks Plaintiff may have intended to refer to Rule 8(c), which addresses affirmative defenses and pleading. The Eleventh Circuit has noted that "[l]iberal pleading rules require a court to determine whether a plaintiff has notice that a defendant is relying on an unpled affirmative defense and whether the plaintiff can legitimately claim surprise and prejudice from a failure to plead the defense affirmatively." *Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 544 (11th Cir. 1991). The court finds it difficult to believe that Plaintiff is surprised that Defendants intended to assert such a defense, as the Equal Pay Act explicitly contains such an exception, and assertion of such a defense is the way by which defendants generally must rebut a plaintiff's *prima facie*. Although Plaintiff contends that he was not able to conduct any discovery on the issue, the issue of the classification system and the grievance process are at the heart of this dispute and at the heart of Defendants' proffered basis other than gender.

AO 72A
(Rev.8/82)

Defendants assert a multitude of arguments in support of its contention that Plaintiff and Stewart's pay differentials were based on a factor other than gender. Defendants rely on the fact that Plaintiff's job was classified as a C43, and Stewart was classified at C52, and employees classified as C52s "would manage more complex programs and supervise other professional, rather than technical or skilled workers" than others in the "C" band. D.E. [92-1], 9. In addition, Defendants contend that

> Fulton County employees may receive different compensation based on a number of factors including, the employee's overall knowledge, education and experience upon entering the position, whether the employee received longevity or cost of living increases during his tenure in the position, and whether the employee may have transferred from another position within Fulton County and retained or increased his prior salary.

*Id*. at 11. Defendants do not actually discuss Stewart or Plaintiff's overall knowledge, education, or experience, nor do they discuss longevity, or exactly why the programs managed by Stewart were more complicated. To establish the "factor other than sex" exception, an employer may not rely on a "general practice" but may consider factors such as the "unique characteristics of the same job; . . . an individual's experience, training or ability; or . . . special exigent circumstances connected with the business." *Glenn v. General Motors Corp.,* 841 F.2d 1567, 1571 (11th Cir.1988). Defendants must at least present "an explanation of how those factors actually resulted in an individual employee earning more than another." *Brock v. Georgia S.W. Coll.,* 765 F.2d 1026, 1037 (11th Cir.1985), *overruled*

*on other grounds by McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988). Defendants'

reliance on the different factors that **may** affect Fulton County employees' compensation

(experience, overall knowledge, education) is unavailing here where Defendants do not

actually discuss how such a policy was applied to either Plaintiff or his comparator.

Defendants also contend that in the late 1990's, a study was approved by the Board

of Commissioners. D.E. [92-7], ¶ 15. The Fox Lawson Study, as it was called, was a

countywide classification study of all Fulton County positions. *Id.* Out of this study came

the current Decision Band Method that Fulton County uses to classify its employees. Under

that study, Plaintiff's position was classified at a C43 level. According to Defendants,

employees can be reclassified to a new or existing class when a substantial change occurs

in the assigned duties of the incumbent's position and class which justified reclassification,

but "reclassifications are subject to approval." D.E. [92-2], ¶¶ 62, 63. Employees can be

reclassified in one of a few ways. Either the Board of Commissioners could approve funding

for reclassification as part of its annual budget process, *id.* at ¶ 67, or the employee could

file a grievance with the Grievance Review Committee, *id.* at ¶ 64. Defendants claim that

the Board of Commissioners did not approve any funding for the reclassification of positions

after 2001, and reclassifications after that date were therefore only approved as a result of

grievances or legal judgments. *Id.* at ¶¶ 69, 70.

AO 72A
(Rev.8/82)

If a grievance is considered to be properly and timely filed, and the Grievance Review Committee found and recommended that the employee be reclassified, a desk audit could be conducted by the Personnel Department. *See* D.E. [92-2], ¶¶ 65, 66. After the desk audit, the Personnel Director could recommend to Defendant Andrews that the person be reclassified, and Andrews' approval was necessary before reclassification would take place. D.E. [92-7], ¶ 14. It seems that the Personnel Department used to perform or had the ability to perform desk audits without a grievance being filed, but Defendant Andrews contends that in 2002 or 2003, "the Personnel Department began receiving a flood of requests for desk audits for individual employees to support reclassification requests." *Id.* at ¶ 16. Because conducting such audits placed undue burden and stress on Fulton County's budget, the Personnel Department requested that the Board of Commissioners approve another countywide classification study, but the Board denied the request. *Id.* at ¶ 17. Defendant Andrews decided, based upon the aforementioned flood of desk audit requests, that until another reclassification study could be done, no more individual reclassifications would be approved unless the employee followed the grievance procedure. *Id.* at ¶ 18. "The decision to suspend reclassifications until the Board approved a new countywide classification study applied to all employees . . . ." *Id.* at ¶ 19. Plaintiff's grievance regarding his reclassification was rejected by the Board of Commissioners because they considered his grievance untimely, and as such, Plaintiff never made it to the desk audit stage.

AO 72A
(Rev.8/82)

Although Defendants do not make it completely clear in their brief, their Statement of Material Fact and accompanying evidence appears to be implying the following basis for the difference in Plaintiff's pay and Stewart's pay. Plaintiff's position was classified as a community development specialist and a C43 level based on the Fox Lawson study. Plaintiff admits that, on its face, the classification system is race and gender neutral, and there is no evidence or argument that C43 was not the proper classification for Plaintiff's job back in the 1990s. The Board of Commissioners refused to approve another classification study and the Board of Commissioners did not approve any funding for the reclassification of positions after 2001.[10] To be paid at the C52 level, the same level as Stewart, Plaintiff's job needed to be reclassified at that level. Because the Grievance Review Committee found that Plaintiff's grievance was untimely, and a properly filed grievance was the only way anyone could be reclassified until a new classification study was done. Plaintiff never filed another timely grievance, and therefore, he was never reclassified. The court finds that Defendants have sustained their burden in explaining that Plaintiff and Stewart's pay differential was

---

[10] Plaintiff denies this fact in Defendants' Statement of Material Fact by contending that Stewart was reclassified in 2007. However, Plaintiff has admitted that Stewart was promoted – not reclassified. D.E. [97], ¶ 17. The Home Manager position was already classified at a C52 level before Stewart got the position. Further, even if Stewart was reclassified, Plaintiff does not argue that it was the Board of Commissioners that reclassified the position, nor is there evidence indicating that the Board of Commissioners reclassified the position. Although Plaintiff denies this statement of fact, Plaintiff has not sufficiently rebutted Defendants' evidence and has not shown that any dispute exists with regard to this fact.

based on a factor other than sex – the original and unsuccessfully challenged classification of Plaintiff's position pursuant to a facially gender and race neutral classification system.

Plaintiff's claim may still survive if he can rebut Defendants' explanation by "showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential." *Irby*, 44 F.3d at 954. Plaintiff asserts repeatedly that the Grievance Committee improperly withheld their decision until Plaintiff could no longer appeal the Grievance Review Committee's decision, and further, that Plaintiff still tried to appeal with Defendant Andrews, but Andrews ignored his appeal. Additionally, Plaintiff asserts that Andrews had the authority to reclassify without making an employee go through the grievance review process. All of these indicate pretext according to Plaintiff.

The non-acceptance letter from the Grievance Review Committee makes it clear that Plaintiff's grievance was not accepted because the Committee considered it untimely. The grievance is dated June 15, 2007, and Plaintiff contends that it was not delivered to him until after the time for appeal had passed. Plaintiff does not explain which portion of the Grievance Polices and Procedures supports this notion. After a review of the Fulton County Grievance Policies and Procedures, and the rejection of Plaintiff's grievance, the court can only presume that Plaintiff relies on the following language:

> Upon a majority vote, the Grievance Review Committee may deny or dismiss any grievance as "frivolous." A timely written explanation of a "frivolous" determination shall be provided to the grievant and department head. Withing twenty (20) days of the date of the written

> denial or dismissal, the grievant may appeal such finding to the County Manager. A frivolous grievance is one of little weight or importance and not worth of serious consideration.

D.E. [92-9], Exhibit 3, 9. Nothing in the rejection of Plaintiff's grievance states that the Grievance Review Committee was denying or dismissing his grievance as "frivolous." Therefore, the language restricting the appeal of such a decision to twenty days after the denial does not, on its face, apply to Plaintiff.[11] There appears to be nothing in the Grievance Policies and Procedures that shows what a grievant should do if his grievance is considered untimely, or if he disagrees with the rejection of his grievance as untimely. However, the non-acceptance letter itself states that Plaintiff could send his questions and concerns regarding the decision to the Chairperson of the Committee. D.E. [97-18]. There is no evidence that Plaintiff did so, and Plaintiff did not attempt to file a new grievance.

As discussed above, Plaintiff has not shown that his job now is similar or equal to Stewart's job as Home Manager. The court found that Plaintiff only established a *prima facie* case as to the time Plaintiff was temporarily acting as Home Manager, whenever that time period was – sometime prior to Stewart becoming Home Manager in January of 2007. As Plaintiff did not file a grievance until May 3, 2007, the grievance would not have been timely as to the time period when Plaintiff was acting as Home Manager but being paid at

---

[11] Even if it did, failure to follow internal procedures is not alone evidence of pretext. *Boykin v. Bank of America Corp.*, 162 F. App'x 837, 840 (11th Cir. 2005) (unpublished case) (citing *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995)).

a C43 level. Defendants offered evidence that after 2001, the only way to get a classification change was through the grievance procedure, and Plaintiff clearly did not comply with that procedure with respect to that period of time when he was supposedly acting as Home Manager. Plaintiff has offered no rebuttal except to say that Andrews had the authority to reclassify Plaintiff if he wanted, but Andrews testified that he made the decision to suspend reclassification by any manner other than through the grievance procedure until the Board of Commissioners authorized another study regarding the classification system. Plaintiff has offered no affirmative evidence rebutting that contention. As stated previously, although Plaintiff asserts that Stewart was reclassified outside of the grievance, it is undisputed that she was actually promoted, and even if she was reclassified, Plaintiff has offered no evidence as to how or by whom she was reclassified.

The court finds that Plaintiff has not offered affirmative evidence that is probative of pretext. Although proving a *prima facie* violation of the Equal Pay Act does not require a showing of intentional discrimination, "if the employer establishes that the disparity is justified by [a differential based on any factor other than sex,] then the plaintiff must come forward with affirmative evidence that indicates that the proffered reason for the disparity is actually a pretext for sex discrimination.*" Schwartz v. Florida Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991). Defendants have offered sufficient evidence showing that Plaintiff's job was classified at a level lower than Stewart's pursuant to a facially gender

neutral classification system, and Plaintiff was not reclassified because the only way to get a reclassification was through a properly and timely filed grievance. Even with the facts viewed in the light most favorable to Plaintiff, it does not appear that the proffered reason was false. While his grievance may have been improperly rejected as untimely by the Grievance Review Committee, there is nothing on the record suggesting that Plaintiff's gender was a factor in his salary, and his complaints regarding the grievance process go more toward his due process claims.

## B.    Section 1983 and Section 1981

Plaintiff alleges violations of his rights under the equal protection clause through 28 U.S.C. §1983 due to race, age, and gender discrimination by Defendants, and further, Plaintiff alleges race discrimination in violation of 28 U.S.C. §1981 by Defendant Fulton County.[12] All of these claims appear to arise solely out of Plaintiff's claims that he was paid less than others who were not the same race, gender, or age as him.

---

[12] As Plaintiff points out, Plaintiff's claims for race discrimination pursuant to §1981 and the equal protection clause, through §1983, merge into one claim. Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. §1981(a). "Section 1981 protects people, and some entities, from racial discrimination during the making of contracts. Section 1981 is enforceable against a municipality through 42 U.S.C. §1983." *Webster v. Fulton County, Ga.*, 283 F.3d 1254, 1256 (11th Cir. 2002). Defendants' argument that the §1981 claim must be dismissed argues form over substance, as the analysis of the two claims is identical. *See Moore v. Ala. Dep't of Corr.,* 137 F. App'x 235, 237 (11th Cir. 2005) (unpublished opinion) (noting that "in a case involving state actors, there is no liability under §1981, and such claims merge into the §1983 claims").

AO 72A
(Rev.8/82)

In the Eleventh Circuit, employment discrimination claims brought pursuant to §1983 and §1981 have the same elements as those brought under Title VII. *See Cross v. State of Alabama,* 49 F.3d 1490, 1507-08 (11th Cir.1995) (citing *Hardin v. Stynchcomb,* 691 F.2d 1364, 1369 n. 16 (11th Cir.1982)); *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985); *Lee v. Conecuh County Bd. of Ed.*, 634 F.2d 959, 962 (5th Cir. Jan. 22, 1981). Under both, Plaintiff is required to prove intentional discrimination. *Stallworth*, 777 F.2d at 1433. Plaintiff, who is asserting a disparate treatment claim, can establish his discrimination through either direct or circumstantial evidence. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). As there is no direct evidence of race, age, or gender discrimination in this case, Plaintiff must rely on the burden shifting method developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Lee*, 634 F.2d at 962. Pursuant to that framework, Plaintiff bears the burden of first establishing a *prima facie* case of discrimination, by showing that he was "a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson*, 376 F.3d at 1087. If Plaintiff does so, he creates a rebuttable presumption that Defendants acted illegally. *Id.*

If Plaintiff is successful in establishing his *prima facie* case, then the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for the purported discrimination. *Wilson*, 376 F.3d at 1087. Defendants' burden is not heavy, nor do

31

Defendants need to show the court that its proffered reason was the actual reason for their behavior. *Id*. If Defendants offer a legitimate, non-discriminatory reason, then Defendants have rebutted the presumption of discrimination. *Id*. The burden then shifts back to Plaintiff to offer evidence that Defendants' proffered reason is mere pretext for intentional discrimination. *Id*.

Plaintiff, although he discusses his claims regarding misclassification and pay rate as one, could be asserting two different discriminatory actions. One being that he was not properly classified, and despite requesting he be reclassified, he was not. The other being that Plaintiff was paid less than others for the same work. "To establish a prima facie case of discrimination regarding pay, a plaintiff may prove that '(1) [the plaintiff] belongs to a [protected class]; (2) [the plaintiff] received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) she was qualified to receive the higher wage.'" *Sumerlin v. AmSouth Bank*, 242 F. App'x 687, 690 (11th Cir. 2007) (unpublished case) (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 734-35 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006)). With regard to the misclassification, Plaintiff's *prima facie* case would require him to show that he was a member of a protected class, and he was treated differently than similarly situated employees outside of his protected class. *See Wilson*, 376 F.3d at 1087.

AO 72A
(Rev.8/82)

The court begins by noting that Plaintiff, an African American male over the age of forty, appears to have abandoned any claim for age discrimination, as Plaintiff does not discuss the age of any of his comparators, and therefore, has not shown that he was similarly situated to anyone outside his relevant class (i.e., someone younger than him). Further, in the section of his brief addressing his §1983 and §1981 claims for wage discrimination, Plaintiff only offers one comparator: Sam Leonard Ring "a white male, similarly situated to Plaintiff in job functions and responsibilities, who was being paid at a C52 wage rate." D.E. [97-1], 21. Although Plaintiff only discusses Carolyn Stewart with reference to his Equal Pay Act claim, the court cannot imagine that Plaintiff did not also intend to offer her as a substantially similar comparator for his §1983 wage discrimination claim. The court, therefore, addresses both Stewart and Ring.

Plaintiff has sufficiently shown that he is a different race than Ring and a different gender than Stewart. Plaintiff has also pointed to evidence from which it could be reasonably inferred that he was doing work at a C52 level, and he was a great employee, and Defendants do not contend that Plaintiff was not qualified to do his job or to do C52 level work. Plaintiff made less than Stewart, after she was promoted to Community District Manager. And although the court does not know Ring's salary, Plaintiff has presented evidence that Ring, who appears to have been the Home finance manager,[13] was classified

---

[13] Plaintiff does not explain what Ring's job actually entails.

at a C52 level and presumably earned a wage in the C52 range. Plaintiff has at least shown that he is in a protected class (or two), and that a material factual dispute exists regarding two out of the three other elements of his *prima facie* case.

However, Plaintiff must still show that he was similarly situated to both Ring and Stewart. In fact, Plaintiff and his comparators, "must be similarly situated in all relevant respects. The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson*, 376 F.3d at 1091 (quotations and citations omitted). To the extent Plaintiff is claiming discrimination with regard to the failure to reclassify Plaintiff, Plaintiff has not offered any similarly situated comparators, as Plaintiff has not argued that any other employees were working higher than their job classification but were successfully reclassified. The court therefore addresses Plaintiff's contentions that he was paid less than those doing the same level of work.

In the Eleventh Circuit the focus of the similarly situated inquiry is not on the job titles or classifications, but the actual job tasks performed. *See Cooper*, 390 F.3d at 735; *Sumerlin v. AmSouth Bank*, 242 F. App'x 687, 690 (11th Cir. 2007) (unpublished opinion). Here, Plaintiff has not informed the court of any of Ring's tasks, and the court only knows his job title, and therefore, cannot determine whether Ring and Plaintiff are similarly situated. As stated above, Plaintiff and Stewart must be nearly identical, but here, their job duties are vastly different. Although there is evidence that Plaintiff and some of his

34

colleagues and superiors felt he was doing C52 level work, that Stewart and Ring are outside of Plaintiff's protected class and were classified at the C52 level is not enough. However, it is again relevant to the court that Plaintiff alleges that at some point, he actually acted as Home Manager and therefore, performed Stewart's job. With respect to that period of time, a jury could reasonably conclude that Stewart and Plaintiff were similarly situated.

Even where Plaintiff sufficiently shows a *prima facie* case of discrimination, Defendants can still escape liability by showing a legitimate non-discriminatory reason for the difference. *Wilson*, 376 F.3d at 1087. Defendants' burden in showing a legitimate non-discriminatory reason for the difference is "exceedingly light," and it is a burden of production and not persuasion. *Vessels v. Atlanta Independent School System*, 408 F.3d 763, 769 (11th Cir. 2005). As discussed above, Defendants have proffered evidence that the pay discrepancy was based on a factor other than sex. As such, they have satisfied their burden by producing a legitimate, non-discriminatory reason for the difference between Stewart and Plaintiff. Plaintiff could then rebut such a decision by showing pretext. The court has already addressed Plaintiff's arguments regarding pretext, and the court's conclusions equally apply here to Plaintiff's claims under §1983 and §1981 for wage discrimination, and as such, Plaintiff's claims for race and gender discrimination pursuant to §§1983 and 1981 cannot survive summary judgment.

### C.    Retaliation

AO 72A
(Rev.8/82)

Plaintiff brings claims for retaliation pursuant to both the Equal Pay Act, 29 U.S.C. §§206(d), 215(a)(3), and pursuant to §1981. Although Plaintiff's Complaint only explicitly alleges retaliatory action by Andrews, Plaintiff now appears to assert retaliation claims against both Defendants. Plaintiff contends that it was retaliation on the basis of his race and/or gender when the Grievance Review Committee denied his grievance, and then failed to inform him of that denial in time for him to appeal, and that Defendant Andrews retaliated against Plaintiff by ignoring his attempt to appeal the Grievance Review Committee's denial and untimely communication of that denial.

Retaliation claims pursuant to 29 U.S.C. §§206(d), 215(a)(3) are analyzed under the same framework used to analyze claims of retaliation brought pursuant to Title VII. *See Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000); *See also Bythewood v. Unisource Worldwide, Inc.*, 413 F. Supp. 2d 1367, 1372-73 (N.D. Ga. 2006) (Carnes, J.); *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1133 (N.D. Ga. 2004) (Duffey, J.). The same is true for Plaintiff's retaliation claims pursuant to §1981. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). To establish a *prima facie* case of retaliation under the Equal Pay Act, a plaintiff must establish the following three elements: "(1) [he] engaged in activity protected under the act; (2) [he] subsequently suffered adverse action by the employer, and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf*, 200 F.3d at 1342-43.

36

Defendants concede that Plaintiff was engaged in statutorily protected expression, and the parties then argue over whether Plaintiff suffered an adverse action and whether a causal connection exists. The court, however, finds that Plaintiff did not engage in statutorily protected expression. The record is completely devoid of complaints of discrimination by Plaintiff. While there is evidence that Plaintiff complained about his classification and the salary he received, there is no evidence that Plaintiff ever complained to Defendant Andrews, Defendant Fulton County, or anyone else, that he thought he was being discriminated against on the basis of either his race or his gender. Further, Plaintiff bases his retaliation claims on the grievance process but neither his grievance nor his appeal of the grievance to Defendant Andrews allege race or gender discrimination or disparity in treatment. "[A]n employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation" of the relevant law. *Petersen v. Utah*, 301 F.3d 1182, 11F88 (10th Cir. 2002). *See also Brown v. City of Opelika*, 211 F. App'x 862, 864 (11th Cir. 2006) (unpublished case) (affirming district court's decision that plaintiff failed to make a *prima facie* case of retaliation because there was no evidence that she ever complained about racial discrimination or even mentioned the word "race"); *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1323 (N.D. Ga. 2009) (Martin, J.); 29 U.S.C. §215(a)(3) (making it unlawful to "discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding

37

**under or related to this chapter** . . .") (emphasis added). Plaintiff's claims for retaliation cannot survive summary judgment.

### D.    State Law Claims

Plaintiff brings state law claims for breach of contract, estoppel, and unjust enrichment against Defendant Fulton County only.

The court begins with Plaintiff's claim for breach of contract. According to the Complaint, "Fulton County's Code of Ordinances and personnel standard operating procedures constitute the terms of the employment contract between Defendant Fulton County and Plaintiff." Compl., ¶ 26. Defendants contend in their Motion for Summary Judgment that Plaintiff's claim for breach of employment contract fail due to sovereign immunity. Plaintiff, in return, argues that Fulton County has waived sovereign immunity with respect to breach of contract claims, and Plaintiff has shown that Fulton County's written compensation plan constitutes a contract between Plaintiff and Defendant, and further, Defendant clearly breached that contract by failing to pay Plaintiff for doing work at C52 level. In response, Defendant appears to concede, or at least no longer argues, that Fulton County has sovereign immunity for breach of contract claims, and instead responds to Plaintiff's contention to that the compensation plan constitutes a contract between the parties.

The court is unclear here as to what exactly Plaintiff is basing his breach of contract claim on. In his brief, Plaintiff alleges that "Brandes [who was formerly employed by Fulton County as Director of Personnel] swore to the terms of the Fulton County compensation resolution with the attached pay plan requiring that employees working at a [Community Development Manager] position be paid at a C52 DBM." D.E. [97-1], 41. As contracts with the county must be in writing, the court presumes that the referenced compensation resolution and attached pay plan constitute the contract on which Plaintiff bases his breach of contract claim. While this is the only writing Plaintiff refers to, Plaintiff does not actually cite to a resolution or pay plan, and instead cites to Paragraph 8 of Brandes' affidavit. However, the cited portion of the Brandes' affidavit does not refer to a compensation resolution or pay plan.[14]

Although Plaintiff does not cite to it, attached to Brandes' affidavit is something entitled PR- 300 - 1- Pay Schedule Compensation Plan. D.E. [92-10], Exhibit 1. The resolution essentially says that a Fulton County Pay Schedule and Compensation Plan will be devised, maintained, annually revised and published, and employees will be paid somewhere within the range that is set forth in the plan for the class and position in which he or she is employed. *Id*. The resolution also states that "No employee shall be paid at a

_____

[14] In Paragraph 8 of his affidavit, Brandes states "Overall, under the DBM structure, jobs are classified based on the level of decision making-responsibility, the essential duties of the position, the level of complexity of the job, the reporting structure and physical requirements of the job." D.E. [92-10], ¶ 8.

salary rate lower than the minimum or higher than the maximum of the salary range approved and established for the class in which currently serving . . . ." *Id.* There is no Fulton County Pay Schedule and Compensation Plan attached to Brandes' affidavit, nor does Plaintiff cite to one, and it does not appear that Plaintiff provided a Plan with his opposition brief. Again the court does not understand exactly what documents Plaintiff contends constitute the alleged contract between Plaintiff and Defendant Fulton County, and Plaintiff's only citation to evidence is the citation to an unrelated paragraph of the Brandes' affidavit. Plaintiff has failed to show a material dispute of fact with regard to his breach of contract claim.

Furthermore, employee manuals and compensation plans "setting forth certain policies and information concerning employment [are not] necessarily [viewed] as a contract." *Ellison v. DeKalb County*, 236 Ga. App. 185, 186 (1999). Generally, provisions in employee manuals are not considered binding agreements, including those relating to termination procedures and promotion procedures and requirements. *Id.* Georgia courts have really only found provisions in employee manuals relating to additional compensation plans to amount to binding contracts between the parties, such as portions of employee manuals relating to disability benefits, vacation pay, and severance pay. *Id.* Plaintiff's claims do not allege that additional compensation is owed him (additional in the sense of benefits, vacation pay, and severance pay), but instead are more analogous to procedures involving promotions

40

and terminations. Even if Plaintiff had sufficiently proffered evidence showing exactly what he contends constitutes the written contract between him and Defendant Fulton County, it is unlikely that such terms could be considered a binding agreement.

The court now turns to Plaintiff's state law claims for unjust enrichment and estoppel. Plaintiff claims that Fulton County should be estoped from asserting any time limitations set forth in its grievance procedures because Plaintiff's supervisors deterred him from formally pursuing his reclassification claims by telling him they were working on getting him reclassified and paid more. Plaintiff also contends that Defendant is being unjustly enriched because Plaintiff is continuing to perform supervisory duties, yet Defendant is still paying him the same rate as a non-supervisory employee. The court is unclear whether Plaintiff is relying on "estoppel" as a claim rather than a defense, and Plaintiff does not appear to be relying on either the doctrine of promissory estoppel[15] or equitable estoppel.[16]

---

[15] "[T]he elements of a promissory estoppel cause of action are: (1) defendant made certain promises, (2) defendant should have expected that plaintiff[ ] would rely on such promises, (3) the plaintiff[ ] did in fact rely on such promises to [her] detriment, and (4) injustice can be avoided only by enforcement of the promise." *Houston v. Houston*, 267 Ga. App. 450, 451 (2004).

[16] According to the Georgia Supreme Court,

The essential elements of an equitable estoppel, or an estoppel *in pais*, are as follows as related to the party against whom the estoppel is sought: (1) conduct amounting to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or

Defendants, as they did with reference to the breach of contract claim, contend that Plaintiff's claims for unjust enrichment and estoppel cannot be asserted against Fulton County because Fulton County has sovereign immunity. As such, Defendants contend they should be granted summary judgment on Plaintiff's claims for unjust enrichment and estoppel. In response, Plaintiff argues the following

> Plaintiff raised such claims [of estoppel and unjust enrichment] since Edwards is still working at Fulton County as a Community Housing Manager and is still improperly being paid at a wage rate under DBM C43. Such equitable relief is available based upon the new damages section applicable to the EPA [Equal Pay Act] and the new FPA [the Fair Pay Act](as discussed in footnote 1 of this Brief, and in the various Civil Rights Act provisions cited herein). Federal Statutory relief cannot be barred by State Constitutional provisions.

D.E. [97-1], 42. That is the sum total of Plaintiff's argument.

---

> at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts; and, as to the party claiming the estoppel: (1) lack of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Bell v. Studdard*, 220 Ga. 756, 760 (1965). However, "where the plaintiff relies upon estoppel in order to defeat a defense raised by the defendant in his answer," estoppel does not need to be pled. *Rieves v. Smith* 184 Ga. 657, 664 (1937). To the extent it appears that this is what Plaintiff is trying to do, then Plaintiff is not actually asserting a claim for estoppel.

42

Plaintiff's claims for estoppel and unjust enrichment do not appear to be based on federal law, and the court is unclear as to how or why Plaintiff seemingly contends that he will be precluded from federal statutory relief if he cannot assert these state law claims. The federal statutes themselves provide for the relief. At any rate, "[a] county is not liable to suit for any cause of action unless made so by statute." O.C.G.A. §36-1-4. Plaintiff has cited no statute showing that Fulton County has waived sovereign immunity as to a claim for unjust enrichment or a claim for estoppel. Therefore, Plaintiff's state law claims cannot survive summary judgment.

### E. Due Process and Failure to Train

Defendants tangentially mention Plaintiff's claim for violation of his due process rights and Plaintiff's allegation in his Complaint that "Defendants violated Section 1983 by failing to properly train its employees in the areas of discrimination and in responding to complaints of discrimination." Compl., ¶ 16. Plaintiff did not address either of these claims. As to the failure to train its employees in the areas of discrimination and responding to complaints of discrimination, as discussed previously with respect to Plaintiff's retaliation claim, there is no evidence that Plaintiff ever made any complaints that he was being discriminated against on the basis of his race or gender. While he did file a grievance regarding his salary, his grievance does not mention race or gender. Plaintiff has presented evidence that two of his supervisors requested his salary and/or classification be increased,

43

but again neither of those mention race or gender. There is also no evidence that Plaintiff made any complaints to the Fulton County Office of Equal Employment Opportunity, although Plaintiff admits that office has the responsibility for investigating complaints of discrimination, including race and gender. D.E. [92-2], ¶ 71. As there is no evidence that Plaintiff ever, until the filing of the present law suit, complained about or asserted that he was being discriminated against on the basis of his race and/or gender, the court is unclear how Plaintiff can assert that Defendants failed to properly train their employees in the areas of discrimination and in responding to complaints of discrimination.

As for Plaintiff's due process claims, Defendants do acknowledge that Plaintiff asserted such claims in his Complaint. However, Defendants only address the due process claims in the portion of their brief arguing that Defendant Fulton County cannot be held liable pursuant to §1983 because they have no policy or custom of race or gender discrimination. It appears from the Complaint that Plaintiff's due process claims are separate, at least to some extent, from his race and gender discrimination claims. As Defendants have not truly addressed Plaintiff's due process claims, the court will not address those claims either.

## III.    Conclusion

The court believes that Plaintiff's Emergency Motion for Discovery is moot, and therefore, DENIES it as MOOT [90]. Defendants' Motion for Leave to File Excess Pages

AO 72A
(Rev.8/82)

is GRANTED [93], and Plaintiff's Motion for Leave to File Excess Pages [96] is

GRANTED. Plaintiff's Motion for Leave to File Sur Reply is DENIED [106]. Defendants'

Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART [92]. The

parties are DIRECTED to file a proposed consolidated pretrial order in compliance with this

court's local rules.


**IT IS SO ORDERED** this 10th day of March, 2011.


<u>        /s/   J. Owen Forrester        </u>
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)